

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION

*****************************************************************

| | |
|---|---|
| EMIL EARL LITTLE DOG, | CIV. 06-1004 |
| Plaintiff, | |
| -vs- | REPORT AND RECOMMENDATION FOR DISPOSITION OF MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

*****************************************************************

The above-captioned 28 U.S.C. §2255 case was referred to this Court by the District Court pursuant to 28 U.S.C. 636(b)(1)(B), for the purpose of conducting any necessary hearings, including evidentiary hearings, and submitting proposed findings of fact and recommendation for disposition thereof.

Having carefully reviewed and considered all the records on file and being fully advised in the premises, the Court does now make and propose the following findings, report and recommendation for disposition of the case.

I.

Petitioner was convicted of four counts of aggravated sexual abuse of a child, one count of sexual contact, and one count of obstruction of justice. He was sentenced on March 29, 2004, to 360 months on each of the aggravated sexual abuse counts, 36 months on the sexual contact count, and 120 months on the obstruction count, all terms to run concurrently. He appealed and his convictions and sentences were affirmed on February 2005.

Petitioner filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 contending that he received ineffective assistance of counsel. The public defender was appointed as counsel and an extension of time to file a supplement to the petition was granted. Petitioner has now filed his supplemental brief in support of his motion to vacate.

The District Court thereafter ordered Respondent, United States of America (Government) to serve and file an answer or responsive pleading and supporting memorandum. The District Court, at the same time, referred the case to this Court to handle on a report and recommendation basis.

The Government then filed a timely answer and supporting brief and Little Dog responded with a reply to the same.

II.

Little Dog requests that the Court grant him an evidentiary hearing on the Motion. Before doing so, the Court must determine, in accordance with Rules 4(b) and 8(a) of the §2255 Rules, whether such a hearing is required in this instance.

An evidentiary hearing need not be held (1) if the prisoner's allegations, accepted as true, would not entitle him to relief; or (2) if the allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible or are conclusions rather than statements of fact. Delgado v. United States, 162 F.3d 981, 983 (8th Cir. 1998). Likewise, an evidentiary hearing is not required "where the files and records of the case conclusively show that the prisoner is not entitled to relief." Standing Bear v. United States, 68 F.3d 271,272 (8th Cir. 1995), cert. denied, 517 U.S. 1147 (1996).

Little Dog's claims are ones that are capable of resolution from the record. Blankenship v. United States, 159 F.3d 336, 337-39 (8th Cir. 1998), cert. denied, 525 U.S. 1090 (1999). After close scrutiny of the record, the Court is convinced that Little Dog cannot prevail on his claims. As such, Little Dog's request for an evidentiary hearing is denied, and the Court shall proceed to dispose of his Motion in a summary manner.

III.

The standard for review of a claim of ineffective assistance of counsel is well established. In order to prevail on an ineffective assistance of counsel claim, petitioner must establish that his counsel's representation was deficient and the deficiency prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "More specifically, the petitioner must show that: (1) his counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different." United States v. Ledezma-Rodriguez, 423 F.3d 830, 836 (8th Cir. 2005).

IV.

The purpose of ineffectiveness review is not to grade counsel's performance but rather, to determine whether a prisoner's Sixth Amendment right to counsel has been violated. 466 U.S. at 688-89, 697. In the review process, a court must recognize that representation is an art and an act or omission that is unprofessional in one case may not necessarily be so in another. Id. at 693. Because lawyers try their cases in their own ways and circumstances differ from case to case, the range of "reasonableness" must be broad. Id. at 689-90. Omissions and miscues are inevitable. There is no such thing as the "perfect" trial.

The burden is on the prisoner to prove by a preponderance of the evidence that counsel's performance was unreasonable. Id. at 687-88. The prisoner must establish that counsel's acts or omissions "were outside the wide range of professionally competent assistance." Id. at 690.

"Judicial scrutiny of counsel's performance must be highly deferential." Id. at 689. A court must avoid second-guessing counsel's strategy for obtaining a favorable result for the client. Id.

A court must "indulge a strong presumption" that counsel's conduct was reasonable and that counsel "made all significant decisions in the exercise of reasonable, professional judgment." Id. at 689-90. Counsel therefore cannot be adjudged ineffective as long as the approach taken "might be considered sound trial strategy." Id. at 689. "As is obvious, Strickland's [performance] standard, although by no means insurmountable, is highly demanding." Kimmelman v. Morrison, 477 U.S. 365, 382 (1986).

The reasonableness of counsel's performance is an objective inquiry. Strickland, 466 U.S. at 688. And, because counsel's conduct is presumed reasonable, a prisoner must demonstrate that no reasonable or competent lawyer would have made the choices his counsel made.

When reviewing counsel's performance, a court must avoid using "the distorting effects of hindsight" and must evaluate the reasonableness of counsel's conduct "from counsel's perspective at the time." Id. at 689. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id.

There is no particular set of rules for counsel's conduct that can satisfactorily take into account the variety of circumstances faced by counsel or the range of legitimate decisions

3

regarding how best to represent a criminal defendant. Id. at 688-89. "Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." Id. at 689. The Sixth Amendment is not meant "to improve the quality of legal representation," but "simply to ensure that [the] defendant[] receive[s] a fair trial." Id.

Counsel has no absolute duty to investigate particular facts or a certain line of defense. Under Strickland, counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Id. at 691. "In any ineffectiveness case, the nature and extent of counsel's investigation, if any, must be directly assessed for reasonableness [under] the circumstances, applying a heavy measure of deference to counsel's judgment." Id. Thus, counsel's decision to rely on a specific defense to the exclusion of others – regardless of whether he investigated those other defenses – is a strategic one and does not amount to ineffective assistance unless the prisoner can prove that the avenue pursued was itself unreasonable. Id. at 688.

As the Strickland Court observed, the reasonableness of counsel's acts depends "critically" upon "information supplied by the [prisoner] or the [prisoner's] own statements or actions." 466 U.S. at 691. Counsel's conversations with the prisoner concerning the facts and circumstances of the case, including discussions relating to witnesses and requests made by the prisoner, are important when assessing the propriety of counsel's litigation performance. Id.

Counsel is not required to present every non-frivolous defense or offer all available mitigation evidence at trial. Burger v. Kemp, 483 U.S. 776, 794-95 (1987); Strickland, 446 U.S. at 699.

"[A]ny deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." Strickland, 466 U.S. at 692. The burden is on the prisoner to prove, by a preponderance of the evidence, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

When a conviction is challenged, the question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt as to the prisoner's guilt. Id. at 695. In making this determination, a court must consider the totality of the evidence

before the jury. Taking into account the effect of any alleged errors on the verdict, a court making its prejudice inquiry must ask if the prisoner has met his burden of showing that it is reasonably likely the verdict would have been different without errors. Id.

V.

Applying these guidelines to this case leads inescapably to the conclusion that Petitioner has failed to meet the rigid standards of Strickland and its progeny and therefore cannot prevail on or obtain §2255 relief for his claim of ineffectiveness assistance of counsel.

VI.

Petitioner was represented at trial and on appeal by Reed Rasmussen, an attorney from Aberdeen, South Dakota. Trial counsel, a member in good standing of the South Dakota State Bar, has represented numerous criminal defendants in federal court within this District for many years.

Petitioner submits that trial counsel failed to investigate alibi information, failed to investigate the recantation of a key witness, and failed as effective and competent counsel at trial due to failure to object at various points during the trial, in particular during the government's closing argument.

The Petitioner list twelve errors committed by trial counsel. The Government disputes all of these claims.

1. PETITIONER WAS NOT ALLOWED ACCESS TO THE DISCOVERY PROVIDED BY THE GOVERNMENT BEFORE THE TRIAL, INCLUDING A JOURNAL KEPT BY ONE OF THE COMPLAINING WITNESSES (MRL) THAT WAS INTRODUCED INTO EVIDENCE AT TRIAL.

The government answers that it engaged in "open" discovery. That is everything relevant in the government's file was provided to petitioner's counsel. It has provided this Court with the Affidavit of Reed Rasmussen setting forth the actions he took during his investigation of the case, and the time and effort he spent reviewing and explaining the matter to petitioner. In order to obtain discovery, Mr. Rasmussen entered into a Stipulation, which was confirmed by a Court Order dated May 16, 2003, which prohibited him from photocopying discovery material for Petitioner's review. He did, however, thoroughly discuss the content of the discovery materials with Petitioner. The journal was in fact offered into evidence as Exhibit A and was used in an effort to impeach M.R.L.'s testimony. In addition, the petitioner cites no precedent to establish he has a constitutional or statutory right to have his own personal copy of his criminal discovery.

2. DURING THE INDICTMENT PERIOD, ONE OF THE COMPLAINING WITNESSES (MRL) RAN AWAY FROM HOME AND WAS APPREHENDED IN TIMBER LAKE, SOUTH DAKOTA. A SEXUAL ASSAULT EXAMINATION WAS PERFORMED,

BUT NO INVESTIGATION DONE OF THE RESULTS AND ANY IMPACT IT MAY HAVE HAD IN PETITIONER'S TRIAL.

Trial counsel responds that the incident was investigated but never confirmed. An effort was made to obtain medical records concerning M.R.L. A Motion for production of Medical Records of M.R.L. was made on November 1, 2003. On November 19, 2003, the Trial Court ordered that these records be produced for an in camera review. Following such in camera review, the Court declined to provide any such records to the defense. It can be assumed that the Trial Court determined these medical records were not relevant to the case.

3. INSUFFICIENT AND INEFFECTIVE INVESTIGATION AND CROSS-EXAMINATION OF THE CLAIMS OF ONE OF THE COMPLAINING WITNESSES THAT SHE HAD BEEN RAPED SEVERAL TIMES AND HAD AN INTACT HYMEN.

Trial counsel replies that numerous references were made to this claim during the examination of witnesses and during the opening statement and closing argument. (Trial transcript, pp. 43, 84-85, 303-4, 534-40, 691 and 696-702) The petitioner makes only conclusionary statements and cites no specific instances of failed investigation or failed cross-examination of witnesses to establish this claim.

4. INSUFFICIENT INVSTIGATION AND DISCUSSION WITH PETITIONER OF THE ACCESSIBILITY OR INACCESSIBILITY OF THE "TREE SITE."

Mr. Rasmussen sets forth in his affidavit that the alleged inaccessibility of tree site was investigated. The owner of the land where the tree was located stated that there were two entrances to the site. While he had tried to block one, the second entrance allowed unrestricted public access to the area. Furthermore, M.R.L. testified that the majority of the assaults occurred at locations other than the tree site.

5. INSUFFICIENT INVESTIGATION TO SHOW A HONDA CAR COULD NEGOTIATE THE TERRAIN TO THE "TREE SITE." TRIAL COUNSEL DID NOT VISIT THE SITE AND DID NOT INVESTIGATE THE ISSUE.

Mr. Rasmussen's affidavit shows that although trial counsel did not visit the site, that the defense investigator, Bob Olson, did visit the site. Despite the fact that Olson observed a barricade across one of the roads accessing the site, he reported that the area was widely known and talked about as a party hangout. An interview was also conducted with Jeremy Schwalk, who at one time lived near the location in question. Although Schwalk raised some questions as to whether a Honda could access the site, he reported a number of vehicles would go to the site. Furthermore M.R.L. testified that the assaults in the country occurred in either the Honda or a truck. Therefore, Mr. Rasmussen decided it would be non-productive to spend a considerable amount of time trying to establish that the Honda might have difficulty reaching the area known as the "tree," particularly in light of the fact M.R.L. testified at trial that most of the assaults had occurred at a residence in McLaughlin.

6

6. **FAILURE TO CALL DANIAL HOISINGTON OR FELIX YOUNG BIRD AS WITNESSES TO CONTRADICT M.R.L.'S TESTIMONY THAT THEY WERE IN THE RED HONDA WITH HER.**

Trial counsel explains that at one time, M.R.L. had told investigators about driving the red Honda with Daniel Hoisington and Felix Young Bird. At trial, however, she denied making such a statement. She claimed in her testimony that she was not driving the vehicle (trial transcript p. 90). There was no claim that any sort of sexual assault occurred in the presence of Hoisington or Young Bird. The fact Hoisington or Young Bird might have testified they had been in the Honda with M.R.L. seemed to trial counsel to be quite insignificant. This Court agrees.

7. **FAILURE TO INVESTIGATE THE ALLEGATIONS BY MRL THAT SEXUAL ABUSE OCCURRED IN THE RED HONDA, AND FAILURE TO INVESTIGATE THE TRUCK'S OPERATING CONDITION.**

Trial Counsel's explanation is that M.R.L. was thoroughly cross-examined about her claims of having been sexually abused in the red Honda. Counsel does not recall petitioner ever informing him that the truck was inoperable during the entire period the sexual assault were alleged to have occurred. Therefore Mr. Rasmussen would not have had any reason to investigate whether or not the truck was operable.

8. **FAILURE TO INVESTIGATE OTHER SOURCES OF SEXUAL KNOWLEDGE SUCH AS PORNOGRAPHIC MOVIES.**

Mr. Rasmussen responds that the fact one or both of the alleged victims might have been exposed to a pornographic movie at some point in time did not appear to be particularly useful information. The petitioner fails to allege except in a general way that his trial attorney specifically failed to present and simply makes another conclusionary claim.

9. **FAILURE OF TRIAL COUNSEL TO INVESTIGATE OTHER POSSIBLE PERPETRATORS WHO MIGHT HAVE SEXUAL ABUSED THE COMPLAINING WITNESSES.**

Mr. Rasmussen responds that the fact that M.R.L. may have been a victim of sexual abuse by someone else was entered into evidence by way of Exhibit A. Counsel does not recall any other information being developed during the investigation of the case to indicate either of the victims has been sexually abused by anyone else. Again this is a conclusionary statement unsupported by any facts. The petitioner points to no other alleged perpetrator that trial counsel should have investigated.

In petitioner's allegations numbered 3, 4, 5, 7, 8 and 9, he asserts that counsel failed to investigate many aspects of this case. The Supreme Court has stated that the duty to investigate can best be defined as "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." <u>Strickland</u>, 466 U.S. at 690. There is

7

no evidence that counsel's investigation in this case was unreasonable. In addition, petitioner has failed to meet the second, or "prejudice" requirement of Strickland.

      10.   INSUFFICIENT AND INEFFECTIVE CROSS EXAMINATION OF KRISTI COKENS. NO OBJECTION MADE PURSUANT TO THE SIXTH AMENDMENT CONFRONTATION CLAUSE OR ON HEARSAY TO THE TESTIMONY THAT REPEATED M.R.L.'S ALLEGATION THAT PETITONER RAPED L.R.L.

Mr. Rasmussen's answer to this allegation is as follows: Ms. Cokens testified about information provided to her by one of M.L.R.'s sisters. Prior to this testimony, the sister had admitted she lied to Ms. Cokens when she reported she had seen petitioner rape another sister (trial transcript, pp. 238-39). Consequently, trial counsel had no reason to object to Ms. Cokens' testimony because the witness to the alleged rape had already admitted the information provided to Cokens was a lie. Petitioner failed to demonstrate that his counsel's examination fell below the standard of reasonable professional assistance.

      11 AND 12.   FAILURE TO OBJECT TO NUMEROUS INSTANCES OF PROFESSIONAL MISCONDUCT IN CLOSING ARGUMENT, AND FAILURE TO RAISE THESE INSTANCES ON DIRECT APPEAL.

Mr. Rasmussen replies that in his experience, attorneys are given wide latitude during closing arguments. He generally does not object to statements made by counsel in closing arguments since such objections are usually overruled. Also, frequent objections not only highlight the statements being made by opposing counsel but also irritate the jury. As to his failure to raise the issue on appeal, trial counsel did not believe there was sufficient prosecutorial misconduct to warrant it being raised as an issue on appeal.

The Eighth Circuit Court of Appeals has ruled that "(S)o long as prosecutors do not stray from the evidence and the reasonable inferences that may be drawn from it, they, no less than defense counsel, are free to use colorful and forceful language in their arguments to the jury." U.S. v. Robinson, 110 F.3d 1320, 1327 (8th Cir. 1997).

Trial courts are vested with broad discretion in controlling closing arguments and the 8th Circuit Court will reverse only on a showing of abuse of discretion. United States v. Cannon, 88 F.3d 1495, 1502 (8th Cir. 1996). There are two elements to consider in determining whether alleged prosecutorial misconduct in closing argument constitutes reversible error:

    a.   The prosecutor's remarks or conduct must, in fact, have been improper and
    b.   such remarks or conduct, in the context of the entire trial, must have prejudicially affected the defendant's substantial rights so as to deprive him of a fair trial.

The Eighth Circuit applied the Strickland test to counsel's failure to object to alleged improper argument in Seehan v. State, 72 F3d 607 (8th Cir. 1995). Under the first prong of Strictland, the court emphasized in Seehan the strong presumption that the challenged conduct of counsel might be considered sound trial strategy. Id. at 611. In Brewer v. U.S. 121 F.3d 712

8

(8th Cir. 1997), counsel testified that he did not object to the closing argument because such objections irritate the jury. The court recognized that the "decision to object during prosecutor's summation must take into account the possibility that the court will overrule it and the objection will either antagonize the jury or underscore the prosecutor's words in their minds." Bussard v. Lockhard, 32 F.3d 322, 324 (8th Cir. 1994). The court agreed with the District Court's conclusion that the before mentioned failure to object fell within the wide range of professionally competent assistance.

Moreover, this court finds that the petitioner does not meet the second requirement under Strickland of showing that the error, if any, in failing to object to the prosecutor's comment was "so serious as to deprive the defendant of a fair trial, a trial whose result is reasonable." Strickland, 466 U.S. at 687.

VII.

After due consideration of the record in light of applicable law, the Court believes that Petitioner is not entitled to relief under §2255 and that his Motion should be dismissed in its entirety. Accordingly, based on the foregoing findings of fact and legal discussion and pursuant to §636(b) and Rule 8(b) of the §2255 Rules, it is hereby

RECOMMENDED that Petitioner's Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody, be denied in all respects and that the case be dismissed with prejudice.

Dated this 15th day of November, 2006, at Aberdeen, South Dakota.

BY THE COURT

Myles J. DeVine
United States Magistrate Judge

ATTEST:
JOSEPH HAAS, Clerk
By _____ Deputy
(SEAL)

NOTICE
Failure to file written objections to the within and foregoing Report and Recommendation for Disposition of Motion to Vacate, Set Aside or Correct Sentence within 10 days from the date of service shall bar an aggrieved party for attacking the Report and Recommendation before the United States District Judge assigned to review the case. See 28 U.S.C. §636(b) and 8(b) of the §2255 Rules.R

9